**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| THOMAS DILELLO, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:24-cv-156 |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| VIRGINIA FARM BUREAU HOLDING CORPORATION and VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY | ) ) ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Thomas Dilello ("Plaintiff"), through his undersigned counsel, brings this action against Virginia Farm Bureau Holding Corporation and Virginia Farm Bureau Mutual Insurance Company ("collectively, "VFB") pursuant to the investigation of his attorneys, personal knowledge as to himself and his own acts and otherwise upon information and belief, and alleges as follows:

## INTRODUCTION

1.      Virginia Farm Bureau Holding Corporation is the parent company for Virginia Farm Bureau, a farm organization that advocates for Virginia Farmers, as well as various insurance companies, health insurance administration, and brokerage services that operate on a for-profit basis.

2.      Virginia Farm Bureau Mutual Insurance Company is an insurance company wholly-owned by Virginia Farm Bureau Holding Corporation.

3.      On or about February 15, 2024, VFB announced publicly that in October 16, 2022, it had been the recipient of a hack and exfiltration of sensitive personal information ("SPI") involving approximately 261,187 individuals who were its members, family members of members, or customers or former customers (the "Data Breach").

4.      VFB reported that this SPI included at least "name, driver's license or state identification number, Social Security number, and financial account information."[1]

5.      Plaintiff and Class members now face a present and imminent lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers.

6.      The information stolen in cyber-attacks allows the modern thief to assume victims' identities when carrying out criminal acts such as:

- Filing fraudulent tax returns;
- Using your credit history;
- Making financial transactions on behalf of victims, including opening credit accounts in victims' names;
- Impersonating victims via mail and/or email;
- Impersonating victims in cyber forums and social networks;
- Stealing benefits that belong to victims; and
- Committing illegal acts which, in turn, incriminate victims.

7.      Plaintiff's and Class members' SPI was compromised due to Defendants' negligent and/or careless acts and omissions and the failure to protect the SPI of Plaintiff and Class members.

8.      As of this writing, there exist many class members who have no idea their SPI has been compromised, and that they are at significant risk of identity theft and various other forms of personal, social, and financial harm.  The risk will remain for their respective lifetimes.

---

[1] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/e86f6a2d-d729-49a3-83b0-f9c46afa5b9b.shtml, last accessed February 29, 2024.

9. Plaintiff brings this action on behalf of all persons whose SPI was compromised as a result of Defendants' failure to: (i) adequately protect consumers' SPI, (ii) adequately warn its current and former customers and potential customers of its inadequate information security practices, and (iii) effectively monitor its platforms for security vulnerabilities and incidents (the "Class"). Defendants' conduct amounts to negligence and violates state statutes.

10. Plaintiff and similarly situated individuals have suffered injury as a result of Defendants' conduct. These injuries include: (i) lost or diminished inherent value of SPI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their SPI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) deprivation of rights they possess under state consumer protection and data breach notification acts; and (v) the continued and certainly an increased risk to their SPI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the SPI.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendants.

12. This Court has personal jurisdiction over Defendants because Defendants' principal place of business is located within this District.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District. Defendants reside within this judicial district and a substantial part of

the events giving rise to the claims alleged herein occurred within this judicial district.

## PARTIES

14.     Plaintiff Thomas Dilello is a natural person residing in Humboldt County, California.  On or about February 18, 2024, Plaintiff was informed via letter that he had been a victim of the Data Breach.

15.     Defendant Virginia Farm Bureau Holding Corporation. is a for-profit Virginia corporation with its principal place of business at 12580 West Creek Parkway, Richmond, Virginia.

16.     Defendant Virginia Farm Bureau Mutual Insurance Company is a for-profit Virginia corporation with its principal place of business at 12580 West Creek Parkway, Richmond, Virginia.  It is a wholly-owned subsidiary of Virginia Farm Bureau Holding Corporation.

## FACTUAL ALLEGATIONS

17.     VFB is both an advocacy organization for Virginia farmers as well as a series of insurance and policy companies that provide insurance services, health administration services, and brokerage services to individuals throughout the United States.

18.     In the ordinary course of doing business with Defendants, customers provide Defendants with SPI such as:

a.  Contact and account information, such as name, address, telephone number, email address, and household members;

b.  Authentication and security information such as government identification, Social Security number, security codes, and signature;

c.  Demographic information, such as age, gender, and date of birth;

d.  Payment information, such as credit card, debit card, and/or bank account number; and

e.  Medical history as self-reported by customers, or medical history as transmitted from other healthcare providers;

19.  On or about February 15, 2024, VFB announced publicly that on or around October 16, 2022, "VFB began experiencing active ransomware encryption on certain systems within its network."  Further, "Through its investigation, VFB determined that certain of its systems were accessible to an unknown actor between October 6, 2022 and October 16, 2022, and certain files on those systems may have been viewed or downloaded."[2]

20.  While VFB became aware of the Data Breach no later than October 16, 2022, it took approximately sixteen months to notify customers and the media of the breach.

21.  As a result, Plaintiff's and class members' SPI was in the hands of hackers for more than sixteen months before Defendants began notifying them of the Data Breach.

22.  Defendants have been distressingly vague on their response to the Data Breach, stating only that "Upon learning of the event, we immediately took steps to secure our systems and have implemented additional security measures to further protect data in our care."[3]

23.  As of this writing, Defendants have offered no concrete information on the steps they have taken or specific efforts made to reasonably ensure that such a breach cannot or will not occur again.

24.  Defendants are offering minimal additional assistance to Plaintiff and class members beyond an inadequate 12 or 24 months of credit monitoring.

---

[2] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/e86f6a2d-d729-49a3-83b0-f9c46afa5b9b.shtml, last accessed February 29, 2024
[3] *Id.*

25.     This response is entirely inadequate to Plaintiff and class members who now potentially face several years of heightened risk from the theft of their SPI and who may have already incurred substantial out-of-pocket costs in responding to the Data Breach.

26.     Defendants' own notice letter to Plaintiff and class members says "Virginia Farm Bureau and its affiliated companies" (which it defines as "Virginia Farm Bureau Mutual Insurance Company, Countryway Insurance Company, Employee Benefits Corporation of America, Benefit Design Group, Inc., Custom Health Care, Inc., and Virginia Farm Bureau Service Corporation – Health Care Consultants division") suffered the data breach, and that affected individuals and their family members who "who received our services or are a current or former VFB employee." This indicates that the Data Breach was widespread across all of Virginia Farm Bureau Holding Corporation's various subsidiaries.

27.     Virginia Farm Bureau Mutual Insurance Company notes on its website that "VFBMIC secures your personal information from unauthorized access, use or disclosure. VFBMIC secures the personally identifiable information you provide on computer servers in a controlled, secure environment, protected from unauthorized access, use or disclosure."

28.     Defendants had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class members, to keep their SPI confidential and to protect it from unauthorized access and disclosure.

29.     Plaintiff and Class members provided their SPI to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

30.     Defendants' data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches in the medical services industry

preceding the date of the breach.

31.     Indeed, data breaches, such as the one experienced by Defendants, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant's industry, including Defendant.

32.     According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[4]  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[5]

33.     The SPI of Plaintiff and members of the Class was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the SPI for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

34.     Defendants knew, or reasonably should have known, of the importance of safeguarding the SPI of Plaintiff and members of the Class, including Social Security numbers, dates of birth, and other sensitive information, as well as of the foreseeable consequences that would occur if Defendants' data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiff and members of the Class a result of a breach.

---

[4] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf, last accessed March 1, 2024.

[5] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

35.     Plaintiff and members of the Class now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their SPI.

36.     The injuries to Plaintiff and members of the Class were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the SPI of Plaintiff and members of the Class.

37.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

38.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks' vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

39.     The FTC further recommends that companies not maintain SPI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

40.     The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and

appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

41.     Defendants failed to properly implement basic data security practices, and their failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer SPI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

42.     A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendant's cybersecurity practices.

43.     Best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

44.     Businesses that store personal information are likely to be targeted by cyber criminals. Credit card and bank account numbers are tempting targets for hackers. However, information such as dates of birth and Social Security numbers are even more attractive to hackers; they are not easily destroyed and can be easily used to perpetrate identity theft and other types of fraud.

45.     The SPI of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.  Numerous sources cite dark web pricing for stolen identity credentials.  For example, personal information can be sold at a price ranging from $40 to

$200, and bank details have a price range of $50 to $200.[6]

46.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration ("SSA") stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[7]

47.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

48.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[8]

49.     Furthermore, as the SSA warns:

---

[6] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs, last accessed March 1, 2024.

[7] SSA, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064 (Jun. 2018), https://www.ssa.gov/pubs/EN-05-10064.pdf, last accessed March 1, 2024.

[8] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft, last accessed March 1, 2024.

Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.

If you receive a new Social Security Number, you should not be able to use the old number anymore.

For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.[9]

50.     Here, the unauthorized access left the cyber criminals with the tools to perform the most thorough identity theft—they have obtained all the essential SPI to mimic the identity of the user.  The personal data of Plaintiff and members of the Class stolen in the Data Breach constitutes a dream for hackers and a nightmare for Plaintiff and the Class.  Stolen personal data of Plaintiff and members of the Class represents essentially one-stop shopping for identity thieves.

51.     The FTC has released its updated publication on protecting SPI for businesses, which includes instructions on protecting SPI, properly disposing of SPI, understanding network vulnerabilities, implementing policies to correct security problems, using intrusion detection programs, monitoring data traffic, and having in place a response plan.

52.     General policy reasons support such an approach.  A person whose personal information has been compromised may not see any signs of identity theft for years.  According to the United States Government Accountability Office ("GAO") Report to Congressional Requesters:

[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches

---

[9] SSA, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064 (Jun. 2018), http://www.ssa.gov/pubs/EN-05-10064.pdf, last accessed March 1, 2024.

cannot necessarily rule out all future harm.[10]

53. Companies recognize that SPI is a valuable asset. Indeed, SPI is a valuable commodity. A "cyber black-market" exists in which criminals openly post stolen Social Security numbers and other SPI on a number of Internet websites. The stolen personal data of Plaintiff and members of the Class has a high value on both legitimate and black markets.

54. Identity thieves may commit various types of crimes such as immigration fraud, obtaining a driver license or identification card in the victim's name but with another's picture, and/or using the victim's information to obtain a fraudulent tax refund or fraudulent unemployment benefits. The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.

55. As noted above, the disclosure of Social Security numbers in particular poses a significant risk. Criminals can, for example, use Social Security numbers to create false bank accounts or file fraudulent tax returns. Defendant's former and current customers whose Social Security numbers have been compromised now face a real, present, imminent and substantial risk of identity theft and other problems associated with the disclosure of their Social Security number and will need to monitor their credit and tax filings for an indefinite duration.

56. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change — Social Security number, driver license number or government-issued identification number, name, and date of birth.

57. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information,

---

[10] *See* https://www.gao.gov/assets/gao-07-737.pdf (June 2007) at 29, last accessed March 1, 2024.

personally identifiable information and Social Security numbers are worth more than 10x on the black market."[11]

58.    Among other forms of fraud, identity thieves may obtain driver licenses, government benefits, medical services, and housing or even give false information to police. An individual may not know that his or her driver license was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud, or until the individual attempts to lawfully apply for unemployment and is denied benefits (due to the prior, fraudulent application and award of benefits).

## **FACTS SPECIFIC TO PLAINTIFF**

59.    On or about February 18, 2024, Plaintiff was notified via letter from Defendants that he had been the victim of the Data Breach.

60.    Plaintiff had been, in the past, a customer Virginia Farm Bureau Mutual Insurance Company, but had not been a customer since 2022.

61.    Had Plaintiff known that his SPI would not have been adequately protected by Defendants, he would not have used Defendants' services or he would have insisted that they not be stored in Defendants' system.

62.    Beginning in late 2022, Plaintiff has been the recipient of a sharp increase in the number of spam calls, texts, and emails that he believes are a result of the Data Breach.

63.    Additionally, Plaintiff has spent, since the time he was notified of the Data Breach, at least ten hours acquiring credit monitoring, placing credit freezes on his accounts, and reviewing his credit reports and account statements going back to October 2022 to see if he has been the

---

[11] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html, last accessed March 1, 2024.

victim of fraud. This is time Plaintiff would otherwise have spent on other pursuits during this time.

64.     Additionally, Plaintiff is aware of no other source from which the theft of his SPI could have come. He regularly takes steps to safeguard her own SPI in her own control.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this class action pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following classes:

> All natural persons residing in the United States whose SPI was compromised in the Data Breach announced by Defendants on or about February 15, 2024.

66.     Additionally, Plaintiff brings this class action pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedures, on behalf of all members of the following subclass:

> All natural persons residing in California whose SPI was compromised in the Data Breach announced by Defendants on or about February 15, 2024 (the "California Subclass").

67.     Additionally, Plaintiff brings this class action pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedures, on behalf of all members of the following subclass:

> All natural persons who obtained insurance through Virginia Farm Bureau Mutual Insurance Company whose SPI was compromised in the Data Breach announced by Defendants on or about February 15, 2024 (the "VFBMIC Subclass").

68.     The Class, the California Subclass, and the VFBMIC Subclass may all be referred to collectively as the Class.

69.     Excluded from the Class are all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, and all judges assigned to hear any aspect of this litigation and their immediate family members.

70.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class

before the Court determines whether certification is appropriate.

71.     **Numerosity**: The Class is so numerous that joinder of all members is impracticable. Defendants have, as of this writing, indicated to the Maine Attorney General that the number of affected class members is approximately 261,187.[12]   The Classes are readily identifiable within Defendants' records.

72.     **Commonality**: Questions of law and fact common to the Class exist and predominate over any questions affecting only individual members of the Class. These include:

a.      When Defendants actually learned of the Data Breach and whether its response was adequate;

b.      Whether Defendants owed a duty to the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their SPI;

c.      Whether Defendants breached that duty;

d.      Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing the SPI of Plaintiff and members of the Class;

e.      Whether Defendants acted negligently in connection with the monitoring and/or protection of SPI belonging to Plaintiff and members of the Class;

f.      Whether Defendants knew or should have known that it did not employ reasonable measures to keep the SPI of Plaintiff and members of the Class secure and to prevent loss or misuse of that SPI;

g.      Whether Defendants have adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

h.      Whether Defendants caused Plaintiff's and members of the Class damage;

i.      Whether Defendants violated the law by failing to promptly notify Plaintiff and members of the Classes that their SPI had been compromised; and

---

[12] https://apps.web.maine.gov/online/aeviewer/ME/40/e86f6a2d-d729-49a3-83b0-f9c46afa5b9b.shtml, last accessed March 1, 2024.

j.      Whether Plaintiff and the other members of the Class are entitled to credit monitoring and other monetary relief.

73.     **Typicality**: Plaintiff's claims are typical of those of the other members of the Class because all had their SPI compromised as a result of the Data Breach due to Defendants' misfeasance.

74.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's counsel are competent and experienced in litigating privacy-related class actions.

75.     **Superiority and Manageability**:  Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Individual damages for any individual member of the Class are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's misconduct would go unpunished.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

76.     Class certification is also appropriate under Rule 23(a) and (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Nationwide Class as a whole and as the California Subclass as a whole.

77.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.      Whether Defendants owed a legal duty to Plaintiff and members of the Class to exercise due care in collecting, storing, using, and safeguarding their SPI;

b.      Whether Defendants breached a legal duty to Plaintiff and the members of the Class

to exercise due care in collecting, storing, using, and safeguarding their SPI;

c. Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e. Whether members of the Class are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

## FIRST CLAIM FOR RELIEF
### Negligence
**(By Plaintiff Individually and on Behalf of the Class and both Subclasses)**

78. Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 77.

79. Defendants routinely handle SPI that is required of their customers and/or patients such as Plaintiff.

80. By collecting and storing the SPI of its customers and/or patients, Defendants owed a duty of care to the individuals whose SPI it collected to use reasonable means to secure and safeguard that SPI.

81. As insurance providers, Defendants are aware of that duty of care to the SPI of its customers.

82. Defendants have full knowledge of the sensitivity of the SPI and the types of harm that Plaintiffs and Class Members could and would suffer if the SPI were wrongfully disclosed.

83. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of their current and former employees' SPI, and that of their beneficiaries and dependents, involved an unreasonable risk of harm to Plaintiff and Class

Members, even if the harm occurred through the criminal acts of a third party.

84.     Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.  This duty includes, among other things, designing, maintaining, and testing Defendants' security protocols to ensure that Plaintiff's and Class Members' information in Defendants' possession was adequately secured and protected.

85.     Defendants also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' SPI.

86.     A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class Members was reasonably foreseeable, particularly in light of Defendants' inadequate security practices.

87.     Plaintiff and the Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew of should have known of the inherent risks in collecting and storing the SPI of Plaintiff and the Class, the critical importance of providing adequate security of that SPI, and the necessity for encrypting SPI stored on Defendants' systems.

88.     Defendants' own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendants' misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiff's and Class Members' SPI, including basic encryption techniques freely available to Defendant.s

89.     Plaintiff and the Class Members had no ability to protect their SPI that was in, and possibly remains in, Defendants' possession.

90.     Defendants were in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

91.     Defendants had and continue to have a duty to adequately disclose that the SPI of Plaintiff and Class Members within Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their SPI by third parties.

92.     Defendants had a duty to employ proper procedures to prevent the unauthorized dissemination of the SPI of Plaintiff and Class Members.

93.     Defendants have admitted that the SPI of Plaintiff and Class Members was purposely exfiltrated and disclosed to unauthorized third persons as a result of the Data Breach.

94.     Defendants, through their actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the SPI of Plaintiff and Class Members during the time the SPI was within Defendant's possession or control.

95.     Defendants improperly and inadequately safeguarded the SPI of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

96.     Defendants failed to heed industry warnings and alerts to provide adequate safeguards to protect its current and former employees' SPI in the face of increased risk of theft.

97.     Defendants, through their actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former employees' SPI.

98. Defendants, through their actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

99. But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class Members, the SPI of Plaintiff and Class Members would not have been compromised.

100. There is a close causal connection between Defendants' failure to implement security measures to protect the SPI of Plaintiff and Class Members and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class. Plaintiff's and Class Members' SPI was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such SPI by adopting, implementing, and maintaining appropriate security measures.

101. As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their SPI is used; (iii) the compromise, publication, and/or theft of their SPI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their SPI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their SPI, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the SPI of its employees and former employees in its possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the SPI

compromised as a result of the Data Breach for the remainder of Plaintiffs' and Class Members' lives.

102. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their SPI, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the SPI in its continued possession.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(By Plaintiff Individually and on Behalf of the Class and both Subclasses)**

103. Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 77.

104. When Plaintiff and Class Members provided their SPI to Defendants in exchange for Defendants' services, they entered into implied contracts with Defendant under which—and by mutual assent of the parties—Defendants agreed to take reasonable steps to protect their SPI.

105. Defendants solicited and invited Plaintiff and Class Members to provide their SPI as part of Defendants' regular business practices and as essential to the services transactions entered into between Defendants on the one hand and Plaintiff and Class Members on the other. This conduct thus created implied contracts between Plaintiff and Class Members on the one hand, and Defendants on the other hand. Plaintiff and Class Members accepted Defendants' offers by providing their SPI to Defendant in connection with their purchases from Defendants.

106. When entering into these implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws, regulations, and industry standards.

107. Defendants' implied promise to safeguard Plaintiff's and Class Members' SPI is evidenced by a duty to protect and safeguard SPI that Defendants required Plaintiff and Class Members to provide as a condition of entering into consumer transactions with Defendants.

108.     Plaintiff and Class Members paid money to Defendants to purchase services from Defendants. Plaintiff and Class Members reasonably believed and expected that Defendants would use part of funds received as a result of the purchases to obtain adequate data security.  Defendants failed to do so.

109.     Plaintiff and Class Members, on the one hand, and Defendants, on the other hand, mutually intended—as inferred from customers' continued use of Defendants' services—that Defendants would adequately safeguard SPI.   Defendants failed to honor the parties' understanding of these contracts, causing injury to Plaintiff and Class Members.

110.     Plaintiff and Class Members value data security and would not have provided their SPI to Defendants in the absence of Defendant's implied promise to keep the SPI reasonably secure.

111.     Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendants.

112.     Defendants breached their implied contracts with Plaintiff and Class Members by failing to implement reasonable data security measures and permitting the Data Breach to occur.

113.     As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiff and Class Members sustained damages as alleged herein.

114.     Plaintiff and Class Members are entitled to compensatory, consequential, and other damages suffered as a result of the Data Breach.

115.     Plaintiff and Class Members also are entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide credit monitoring and identity theft insurance to Plaintiff and Nationwide Class members.

## THIRD CLAIM FOR RELIEF
### Unjust Enrichment, in the Alternative
### (By Plaintiff Individually and on Behalf of the Class and both Subclasses)

116.    Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 77.

117.    Plaintiff and Class Members conferred a monetary benefit upon Defendants in the form of storing their SPI with Defendants in such a way that saved expense and labor for Defendants.

118.    Defendants appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. Defendants also benefited from the receipt of Plaintiff's and Class Members' SPI, as this was used by Defendants to facilitate its core functions.

119.    The benefits given by Plaintiff and Class Members to Defendants were to be used by Defendants, in part, to pay for or recoup the administrative costs of reasonable data privacy and security practices and procedures.

120.    As a result of Defendants' conduct, Plaintiff and Class Members suffered actual damages in an amount to be determined at trial.

121.    Under principles of equity and good conscience, Defendants should not be permitted to retain a benefit belonging to Plaintiff and Class Members because Defendants failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members granted to Defendants or were otherwise mandated by federal, state, and local laws and industry standards.

122.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds or benefits it received as a result of the conduct alleged herein.

**FOURTH CLAIM FOR RELIEF**

**Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.**
**(By Plaintiff Individually and on Behalf of the California Subclass)**

123.    Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 77.

124.    The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq*., prohibits, inter alia, "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

125.    Defendants engaged in unlawful, unfair, and fraudulent business acts or practices in violation of the UCL. Defendants' acts, omissions, and conduct were "unlawful" because they violated the FTC Act and California data privacy laws. Defendants' acts, omissions, and conduct were also "unlawful" because they violated the California Customer Records Act ("CCRA"), Cal. Civ. Code § 1798.80, *et seq*.

126.    Defendants failed to take reasonable measures to protect Plaintiff's and Class members' SPI, in violation of Cal. Civ. Code § 1798.81.5. Defendants also failed to timely and fully disclose the extent of the Data Breach in the Notice sent to Plaintiff and Class members, in violation of Cal. Civ. Code §1798.82.

127.    Defendants' acts, omissions, and conduct were also "unlawful" because they violated the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), by failing to implement proper procedures and filing to safeguard Plaintiff's and Class Members' SPI. Defendants' acts, omissions, and conduct were "unfair" because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class Members. The gravity of harm resulting from Defendants' conduct outweighs any potential benefits attributable to the conduct and there were reasonably available

alternatives to further Defendants' legitimate business interests. Defendants' unfair acts and practices include, but are not limited to:

•    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' SPI, which was a direct and proximate cause of the Data Breach;

•    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the industry, which were direct and proximate causes of the Data Breach;

•    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' SPI, including but not limited to duties imposed by the CCRA, the CCPA, the CMIA, and the FTC Act, which were direct and proximate causes of the Data Breach;

•    Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Class Members' SPI, including by implementing and maintaining reasonable security measures;

•    Misrepresenting that they would comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiff's and the Class members' SPI;

•    Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff's and Class members' SPI;

- Omitting, suppressing, and concealing the material fact that they did not comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiff's and Class Members' SPI; and

- Failing to promptly and adequately notify Plaintiff and Class members that their SPI was accessed by unauthorized persons in the Data Breach.

128. Defendants engaged in fraudulent business practices by making material misrepresentations and by failing to disclose material information regarding Defendants' deficient security policies and practices, the security of the SPI of Plaintiff and Class Members, and the Data Breach.

129. Defendants had exclusive knowledge of material information regarding its deficient security policies and practices, and regarding the security of the SPI of Plaintiff and Class members. This exclusive knowledge includes, but is not limited to, information that Defendant received through internal and other non-public audits and that the SPI of Plaintiff and Class Members was vulnerable.

130. Defendants also had exclusive knowledge about the extent of the Data Breach, including during the days, weeks, and months following the Data Breach.

131. Defendants failed to disclose the material information it had regarding its deficient security policies and practices, and regarding the security of the SPI of Plaintiff and Class Members. For example, even though Defendants have long known that their security policies and practices were substandard and deficient, and that the SPI of Plaintiff and Class members was vulnerable as a result, Defendants failed to disclose this information to Plaintiff and Class Members. Likewise, during the days and weeks following the Data Breach, Defendants failed to disclose information that it had regarding the extent and nature of the Data Breach.

132.    Defendants' representations and omissions were material because they were likely to deceive reasonable individuals about the adequacy of Defendants' data security and its ability to protect the confidentiality of current and former employees' SPI.

133.    Had Defendants disclosed to Plaintiff and Class Members that their data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business. Instead, Defendants received, maintained, and compiled Plaintiff's and Class Members' SPI without advising them that Defendants' data security practices were insufficient to maintain the safety and confidentiality of their SPI. Accordingly, Plaintiff and the Class Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

134.    Defendants' practices were also contrary to legislatively declared and public policies that seek to protect data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws like CCRA, CCPA, and FTC Act.

135.    The injuries suffered by Plaintiff and Class Members greatly outweigh any potential countervailing benefit to consumers or to competition, and are not injuries that Plaintiff and Class Members should have reasonably avoided.

136.    The damages, ascertainable losses and injuries, including to their money or property, suffered by Plaintiff and Class Members as a direct result of Defendants' unlawful, unfair, and fraudulent acts and practices as set forth in this Complaint include, without limitation:

- unauthorized charges on their debit and credit card accounts;

- theft of their SPI;

- costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

- loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse effects on their credit scores and adverse credit notations;

- costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Data Breach, including without limitation finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

- the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their SPI being placed in the hands of criminals;

- damages to and diminution in value of their personal information entrusted to Defendants, and with the understanding that Defendants would safeguard their data against theft and not allow access and misuse of their data by others; and

- the continued risk to their SPI, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect data in their possession.

137. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendants from disclosing their SPI without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## FIFTH CLAIM FOR RELIEF
### Violation of the California Customer Records Act, Cal. Civ. Code § 1798.81.5, *et seq.*
### (By Plaintiff Individually and on Behalf of the California Subclass)

138.    Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 77.

139.    Cal. Civ. Code § 1798.81.5 of the California Customer Records Act ("CCRA") provides that "to ensure that personal information about California residents is protected," businesses maintaining the personal information of California residents "shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

140.    Defendants failed to take reasonable measures to protect Plaintiff's and Class members' SPI, in violation of Cal. Civ. Code § 1798.81.5.

141.    Further, the CCRA requires that "[a] person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

142.    Defendants did not immediately notify Plaintiff and the California Subclass of the Data Breach upon its discovery, and instead waited more than sixteen months to provide notice.

143.    Defendants also failed to timely and fully disclose the extent of the Data Breach in the Notice sent to Plaintiff and Class members, in violation of Cal. Civ. Code § 1798.82.

144.    Defendant's' violations of Cal. Civ. Code §§ 1798.81.5 and 1798.82 area direct and proximate result of the Data Breach.

145.     Plaintiff and the Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their SPI without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

### SIXTH CLAIM FOR RELIEF
**Violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, *et seq*.**
**(By Plaintiff Individually and on Behalf of the California Subclass)**

146.     Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 77.

147.     Cal. Civ. Code § 1798.150(a) of the California Consumer Privacy Act ("CCPA") provides that "[a]ny consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5 . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action" for statutory damages, actual damages, injunctive relief, declaratory relief and any other relief the court deems proper.

148.     Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1798.140(i) because he is natural person who resides in California.

149.     Defendants are "businesses" as defined by Cal. Civ. Code § 1798.140(d) because Defendants are corporations organized for the profit or financial benefit of their shareholders or owners and have gross annual revenues in excess of seven-hundred million dollars.

150.     Defendants failed to take sufficient and reasonable measures to safeguard their data security systems and protect Plaintiff's and Class Members' highly sensitive personal information and medical data from unauthorized access.

151. Defendants' failure to maintain adequate data protections subjected Plaintiff's and the Class's nonencrypted and nonredacted sensitive personal information to exfiltration and disclosure by malevolent actors.

152. Defendant's violations of Cal. Civ. Code § 1798.150(a) are a direct and proximate result of the Data Breach.

153. Plaintiff and the Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their SPI without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all Class Members, requests judgment against the Defendants and the following:

A. For an Order certifying the Class as defined herein, and appointing Plaintiff and his counsel to represent the Class;

B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class Members' SPI;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    ii. requiring Defendants to protect, including through encryption, all data

collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Members' personal identifying information;

iv. prohibiting Defendants from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database (if, in fact, it does so);

v. requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vi. requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

vii. requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

viii. requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix. requiring Defendants to conduct regular database scanning and securing checks;

x. requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xi. requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii. requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiii. requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv. requiring Defendants to meaningfully educate all Class Members about the

threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

    xv. requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and

    xvi. for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.    For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For pre- and postjudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 2, 2024             Respectfully Submitted,

                                  */s/ Steven T. Webster*
                                  Steven T. Webster (VSB No. 31975)
                                  swebster@websterbook.com
                                  Webster Book LLP
                                  300 N. Washington St., Suite 404
                                  Alexandria, VA 22314

(888) 987-9991 (telephone and fax)

*Local Counsel for Plaintiff and the Putative Class*

Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois  60604
Tel: (312) 984-0000
Fax:  (212) 686-0114
malmstrom@whafh.com

*Attorney for Plaintiff and
the Putative Class*